IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

CHRISTOPHER J. DEADMON                                      PLAINTIFF

V.                          NO. 09-6086

MICHAEL J. ASTRUE,
Commissioner of Social Security                              DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Christopher J. Deadmon, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act (the Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**Procedural Background**

Plaintiff filed his application for SSI on June 5, 2007, alleging disability beginning February 1, 2002. (Tr. 11). Following denial initially on August 15, 2007, and upon reconsideration on October 24, 2007, a hearing was held before an Administrative Law Judge (ALJ) on March 17, 2009. (Tr. 24-45). At the hearing, the alleged onset date of disability was amended to June 6, 2007. (Tr. 29). On June 9, 2009, the ALJ issued a decision denying Plaintiff's claim for benefits. (Tr. 8-23). The ALJ found that Plaintiff had the following severe impairments: Type II Insulin-Dependent Diabetes Mellitus; Peripheral Neuropathy; History of Pancreatitis; Hypertension (controlled with medication); Arthritis; and Major Depression and

Anxiety. (Tr. 13). However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments, and found that Plaintiff had the Residual Functional Capacity (RFC) to perform light work with certain limitations. (Tr. 14 ). More specifically, the ALJ found that Plaintiff could lift-carry and push-pull up to 20 pounds occasionally and 10 pounds frequently, with the ability to sit a total of 6 hours in an 8-hour workday, and the ability to stand and/or walk 4 hours in an 8-hour workday (2 hours in a continuous period). He further found that Plaintiff would require work where interpersonal contact was incidental to the work performed, and where tasks/work performed were no more complex than those learned by rote with few variables and little judgment required. He would also require work under supervision that was simple, direct, and concrete. (Tr.14 ). The ALJ further found that Plaintiff was unable to perform any past relevant work, and that there were jobs in the national economy, such as factory work packer and janitorial worker, that Plaintiff would be able to perform. (Tr. 21-22). Plaintiff's request for a review was denied by the Appeals Council on August 29, 2009, and the decision of the ALJ therefore became the final decision of the Commissioner. (Tr. 1-3).

**Evidence Presented**

Plaintiff was born in 1967 and completed the eleventh grade of school. (Tr. 27-28). In March 20, 2007, he was discharged from Hot Spring County Medical Center (HSCMC), with a diagnosis from Dr. Michael Higginbotham of diabetes mellitus, uncontrolled, and instability in his gait. (Tr. 191). While there, he was also treated for depression. (Tr. 191). On March 22, 2007, he was treated at National Park Medical Center for hyperglycemia, and his blood sugar measured 544. He had been brought to the emergency room after being in a chase with police.

(Tr. 166). It was noted that he had been non-complaint with medications and had been smoking "crack." (Tr. 166). Plaintiff said that he could not afford insulin and requested that the center pay for a night's stay at a hotel and that they get him a job. (Tr. 168). His drug screen was positive for cocaine, and his primary diagnosis was hyperglycemia. (Tr. 170, 173). An individual from the center's case management team discussed available shelters in Little Rock and Hot Springs, and Plaintiff subsequently began receiving treatment at Charitable Christian Medical Clinic (CCMC). (Tr. 172).

On March 27, 2007, Plaintiff presented to the HSCMC with his diabetes mellitus out of control. (Tr. 192). He was reported as not taking care of himself and not taking his medicine. (Tr. 192). His habits were noted as significant for tobacco - one-half pack of cigarettes per day; drinking alcohol occasionally; and drinking caffeinated beverages daily. He denied any other illicit drug use, and his blood sugar was noted to be greater than 600. (Tr. 192). He was assessed as having diabetes mellitus; history of pancreatitis; ETOH; dumping syndrome; tobacco use; fatigue; questionable blood pressure; and depression. (Tr. 194). On March 30, 2007, his discharge diagnosis was diabetes mellitus, uncontrolled, and instability in gait. (Tr. 207). He was treated for depression and diabetes mellitus while at the center and was stabilized. (Tr. 207). His weakness was addressed with physical therapy and gait training and strengthening exercises. He was noted as improving significantly. (Tr. 207).

On May 12, 2007, Plaintiff was incarcerated at Garland County jail, where his diabetes mellitus was under constant observation. (Tr. 138-155). During his incarceration, he was found to have hidden numerous commissary items in a hole in his mattress, and on a couple of occasions, he refused insulin. (Tr. 140, 142, 149).

On June 9, 2007, Dr. Higginbotham had Plaintiff undergo a CT of his abdomen and pelvis and kidneys. The impression of the CT was 1: Calcifications over the pancreas area noted, suggesting chronic pancreatitis; 2) There is paucity of bowel gas and this decreases the sensitivity of the exam; 3) There appears to be a small amount of calcification in the right iliac artery. (Tr. 187). In the History and Physical Report prepared by HSCMC dated June 10, 2007, it was noted that Plaintiff complained of abdominal pain, headache, and diabetes. He was reported as running out of his insulin and had no money to purchase more. The impression was acute pancreatitis; headache; and diabetes mellitus. (Tr. 205). The discharge diagnosis from HSCMC on June 12, 2007 was:

1. Acute pancreatitis
2. Headache
3. Diabetes mellitus, out of control

(Tr. 203). The discharge summary noted that Plaintiff was having difficulty affording his medications and had been using CCMC, and a social work consult was going to be done.

In a June 29, 2007 Function Report, Plaintiff complained of his shoulder to finger going numb and his legs tingling. He stated that his condition affected his lifting, the use of his hands, standing, seeing, walking and reaching - that his right arm hurt when he picked up things, and his legs bothered him - tingled - when he stood. He also stated that his right wrist gave out and that his right arm hurt and went numb. (Tr. 107). Although Plaintiff did work after his illnesses began, he stated that his conditions became so bad that he could not perform his duties. (Tr. 84).

On August 3, 2007, a Physical RFC Assessment was prepared by Dr. Ronald Crow, a non-examining physician. (Tr. 210-217). The primary diagnosis was diabetes mellitus and the secondary diagnosis was acute pancreatitis. (Tr. 210). Dr. Crow found that Plaintiff could

occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk for a total of about 6 hours in an 8-hour workday; sit for a total of about 6 hours in an 8-hour workday; and had unlimited ability to push and/or pull. (Tr. 211). Dr. Crow found that no postural, manipulative, visual, communicative or environmental limitations were established. (Tr. 212-214).

On August 14, 2007, a Psychiatric Review Technique form and Mental RFC Assessment were completed by Dr. Kay M. Gale. (Tr. 218-230). Dr. Gale concluded that Plaintiff seemed capable of performing at least unskilled work, where interpersonal contact was incidental to work performed, e.g. assembly work; and where the complexity of the tasks was learned and performed by rote, with few variables; where little judgment was used; and where the supervision required was simple, direct and concrete. (Tr. 230, 234).

The earliest medical records from CCMC in the file are dated August 14, 2007, when Plaintiff presented to the clinic very tired, needing medicine refills and to find out about a prostate check and colonoscopy. He was assessed with diabetes mellitus, and peripheral neuropathy. (Tr. 242). On September 5, 2007, Plaintiff presented to the clinic complaining of his diabetes, and was told by Dr. Crenshaw that he needed to attend AA for his alcohol dependence, that he had uncontrolled diabetes, and would die of complications unless he changed his lifestyle. (Tr. 237-38). He was also told that any alcohol - beer-wine, etc., was POISON for him. (Tr. 238).

Apparently, Plaintiff did not comply with the admonitions regarding alcohol, because on October 24, 2007, CCMC notes indicate that Plaintiff was again told to avoid alcohol entirely. (Tr. 264). He was still having high blood sugars and his pain and anxiety were worse. (Tr. 265).

On December 11, 2007, Plaintiff presented to the CCMC for a check up on his pain in his hand and ankle and arm pain. (Tr. 262). The CCMC notes reflect that Plaintiff was told he must control his diabetes. (Tr. 261). On January 17, 2008, Plaintiff was told to stop smoking, and he was reported to have had a syncope when he drove to the mailbox - blacked out and hit a tree. (Tr. 259-260). He was also reported as having numbness of the balls of his feet. (Tr. 260).

On March 18, 2008, CCMC reported that Plaintiff was following medical recommendation and was improving (Tr. 256), although he was having more pain in his right hand. (Tr. 257). On June 5, 2008, CCMC assessed Plaintiff with major depression, neuropathy, and type II Diabetes Mellitus - insulin required. (Tr. 254). On September 9, 2008, CCMC reported that Abilify was helping with the depression, and his urine test was normal. (Tr. 283). On November 11, 2008, CCMC reported that Plaintiff's blood sugar was way out of control, and his medicines were adjusted. (Tr. 280). His feet were reportedly achy, and he had "firey legs and low back, right arm pain, tingling." (Tr. 281).

On December 11, 2008, CCMC reported that there was slow improvement in diabetic control. (Tr. 277). He was also reported as having blurry vision and pain in his legs and feet. (Tr. 278). On February 10, 2009, CCMC reported that Plaintiff had "improved diabetes." (Tr. 293). The CCMC also reported fire through Plaintiff's legs and feet and numbness in his right arm and fingers. (Tr. 293).

At the hearing held before the ALJ, Plaintiff testified that his last job was at a lumberyard, cleaning the machines and driving heavy equipment. (Tr. 28). He stated that he stopped working there because he was having complications with his feet and legs, due to his diabetes and neuropathy. (Tr. 28). He stated that he received his medical treatment from Dr.

Crenshaw at CCMC once a month, and recently he started seeing him once every two months. (Tr. 31). Plaintiff stated that his normal blood sugar reading was 196 and that his blood pressure was under control. (Tr. 32). He stated that he was taking Lantus and Metformin for his diabetes, Neurontin for his neuropathy and was on Celebrex for his arthritis. (Tr. 32). He also stated that he was on some anti-depressants and that he had some side effects from medication - dizziness sometimes, fatigue, and depression. (Tr. 33). He stated that he was experiencing numbness and a tingling feeling in his feet. (Tr. 34). He also stated that he had continuous numbness from the top of his right arm to his fingers - that he continuously had numbness in his first two fingers and had problems buttoning his clothes and holding cups. (Tr. 36-37). He said that he had constant pain in his right arm. The Neurontin helped a little bit and he could tell when he was not on it. (Tr. 38). He also stated that he had problems with his pancreatitis and had stomach issues and was taking Nexium for his "acid that comes up constantly." (Tr. 38).

Plaintiff stated that he could sit and stand for 2 to 3 hours, could lift about 25 pounds with his dominant left hand, and did not climb stairs. (Tr. 40-41). He said that he did not have a driver's license because he was behind in his child support and it was suspended. (Tr. 42).

Plaintiff indicated that on a daily basis, he prayed, took medications, tried to eat, wash dishes, fed dogs, and did whatever needed to be done. (Tr. 102). He tried to cook a meal twice weekly, keep the kitchen clean, vacuumed the living room and sometimes mowed the lawn. (Tr. 104). He reported that he had to be around a bathroom because he had to go so often. (Tr. 107).

The ALJ presented to the VE the following hypothetical question:

Please assume an individual 42 years of age with an 11th grade education and the same past relevant work as Mr. Deadmon. Assume a light exertional residual functional capacity as that term is normally defined and that he is able to lift and carry 20 pounds

-7-

occasionally, 10 pounds frequently and sit for six hours out of an eight-hour workday, stand and walk six hours out of an eight-hour workday and is limited to unskilled work. That is, the individual has the mental capacity to perform work where interpersonal contact is incidental to the work performed, past[sic] can be no more complex than those learned and performed by wrote with few variables and requiring little judgment. Simple, direct and concrete supervision would be required. Could such an individual perform any of Mr. Deadmon's past relevant work?

The VE responded that Plaintiff would not be able to return to his past work, but that there were other jobs that existed in significant numbers that he could perform - that of factory worker as a "packer packaging", and janitorial work. (Tr. 43-44).

**Applicable Law**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one

-8-

year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A plaintiff must show that her disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and, (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**Discussion**

The Court is most concerned with the fact that prior to Dr. Crow's August 3, 2007 Physical RFC Assessment, Plaintiff indicated in his Function Report that his right arm hurt and would go numb, and his right wrist would give out. However, Dr. Crow, a non-examining consultative physician, indicated that Plaintiff had no manipulative limitations. Subsequent

thereto and prior to the hearing before the ALJ, Dr. Crenshaw reported that Plaintiff had right arm pain and numbness, and Plaintiff continued to complain to him that he had pain, tingling and numbness in his right hand, with particular numbness in his right arm and fingers. Even though the ALJ inquired extensively at the hearing about Plaintiff's right hand and fingers, and Plaintiff confirmed his frequent numbness in his hand, the ALJ stated in his decision that Plaintiff's alleged limitations in his ability to lift, stand, walk, reach and use hands were "a very restricted pattern of limitations and restrictions that are inconsistent with the medical findings, especially as to the severity alleged."

It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," Singh v. Apfel, 222 F.3d 448, 451(8th Cir. 2000), and thus, "some medical evidence," Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir.2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. Cf. Nevland v. Apfel, 204 F.3d at 858; Ford v. Secretary of Health and Human Services, 662 F. Supp. 954, 955, 956 (W.D.Ark. 1987) (RFC was "medical question," and medical evidence was required to establish how claimant's heart attacks affected his RFC). The ALJ gave much weight to Plaintiff's treating physician, who reported Plaintiff's complaints of arm and finger numbness. In this type of case,

the Court believes the ALJ should have either asked Plaintiff's treating physician to prepare and submit a Physical RFC Assessment or have the Plaintiff examined by another physician, who could have submitted a Physical RFC Assessment, in order to determine Plaintiff's physical limitations, if any, with his right hand, and his ability to function in the workplace.

Furthermore, in his hypothetical to the VE, the ALJ did not include any limitations regarding Plaintiff's ability to use his right hand. Although Plaintiff's left hand was dominant, it would seem that both hands would be needed for the positions that the VE stated Plaintiff would be able to perform - factory work packer and janitor.[1] An ALJ may omit alleged impairments from a hypothetical question when "'[t]here is no medical evidence that these conditions impose any restrictions on [the claimant's] functional capabilities.'" Owen v. Astrue, 551 F.3d 792, 801-02 (8th Cir. 2008) quoting Haynes v. Shalala, 26 F.3d 812, 815 (8th Cir. 1994). An ALJ may also omit alleged impairments from a hypothetical question "when the record does not support the claimant's contention that his impairments 'significantly restricted his ability to perform gainful employment.'" Owen, 551 F.3d at 802, quoting Eurom v. Chater, 56 F.3d 68 (8thCir. 1995)(per curiam)(unpublished table decision). In the present case, there is evidence in the record that the difficulties Plaintiff suffered with his hand were uncontrollable and restricted his ability to do work. The Court is therefore of the opinion that the ALJ's hypothetical question to the VE was "flawed," since it failed to mention restrictions in Plaintiff's ability to use his right hand. See Fuller v. Barnhart, 328 F.Supp. 2d 952, 957 (E.D. Ark. 2004)(the ALJ's hypothetical question posed to the VE was "flawed" because it failed to mention

---

[1] Neither the VE nor the ALJ indicated specifically which DICOT listing was used for factory work packager and janitor.

restrictions to perfumes or colognes or the loss of memory and erratic behavior on the part of plaintiff when plaintiff consumed steroids). The Court also notes that Plaintiff complained of side effects of his medication - dizziness, fatigue and headaches.

The Court finds it appropriate to remand this matter, and upon remand, the ALJ should obtain a Physical RFC Assessment from Dr. Crenshaw or an examining physician, and also address the Plaintiff's alleged side effects of his medications, when re-evaluating Plaintiff's RFC.

**Conclusion**

Based upon the foregoing, the undersigned reverses the decision of the ALJ and remands this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. §405(g).

IT IS SO ORDERED this 8th day of October, 2010.

/s/ Erin L. Setser
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)